UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| ROOFING & RECONSTRUCTION CONTRACTORS OF AMERICA L ET AL | CASE NO. 2:21-CV-03551 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| CHURCH MUTUAL INSURANCE CO | MAGISTRATE JUDGE KAY |

MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [docs. 38, 44] filed by defendant Church Mutual Insurance Company and seeking dismissal of the claims of plaintiffs Stalwart General Contractor ("Stalwart") and Kinder Bible Church Inc. ("Kinder Bible"/"the church"). Both plaintiffs oppose the motion. Docs. 40, 43.

I.
BACKGROUND

This suit arises from alleged damage to Kinder Bible's facilities in Hurricane Laura and Hurricane Delta, which made landfall in Southwest Louisiana on August 27 and October 9, 2020, respectively. At all relevant times Kinder Bible was insured under a policy issued by Church Mutual. Kinder Bible reported damage immediately after Hurricane Laura, but Church Mutual determined after its inspections that the damage fell below the $34,380.00 deductible. Doc. 44, att. 5, pp. 1–6; *see* doc. 44, atts. 6–10 (estimates). Accordingly, Church Mutual closed the claim file in January 2021. *Id.* The church then assigned its "rights, benefits, interests, proceeds, and any causes of action" under the policy to Stalwart, a contractor, in July 2021. Doc. 44, att. 12. It also executed a Limited Pro Bono

Retainer and Authority to Represent in support of the assignment. Doc. 44, att. 13. On July 8, 2021, Church Mutual received a voice message from Jeff Knapp with Roofing and Reconstruction Contractors of America LLC ("RRCA"), a roofing contractor from Florida and with Stalwart, advising that he believed damage was missed at Kinder Bible's facility. Doc. 44, att. 5, pp. 7–8. Church Mutual received a letter of representation later that month and, after several requests, an estimate and demand letter on September 7, 2021. Doc. 44, atts. 14–19. The estimate set damages at $1,014,918.82. Doc. 44, att. 19.

On August 24, 2021, RRCA, Stalwart, and Kinder Bible filed suit against Church Mutual in the 33rd Judicial District Court, Allen Parish, Louisiana, raising claims of breach of contract.[1] Doc. 1, att. 2. Church Mutual removed the suit to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. The dispute was submitted to appraisal and the parties' appraisers agreed on a damage amount of $403,304.60 RCV/$367,656.77 ACV. Church Mutual represents that it paid the ACV amount of the award. Plaintiffs subsequently amended their complaint to add claims of bad faith. Doc. 26. The case proceeded through the court's streamlined settlement process but did not resolve. It is now set for jury trial before the undersigned on July 22, 2024.

Church Mutual brings this motion for summary judgment, seeking dismissal of (1) all bad faith claims based on plaintiffs' inability to create a genuine issue of material fact as to Church Mutual's claims handling, (2) the claims of Kinder Bible based on its assignment, (3) plaintiffs' claim for appraisal costs, (4) plaintiffs' claim for breach of

---

[1] RRCA was subsequently dismissed as plaintiff pursuant to a joint stipulation. Doc. 15.

contract based on Church Mutual's failure to tender Replacement Cost Value and other amounts allegedly due, and (5) plaintiffs' claim for additional amounts under the policy's Structures on the Premises coverage. Doc. 44. Plaintiffs oppose the motion. Doc. 43.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v.*

*Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
### LAW & APPLICATION

### A. Bad Faith Claims

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). The words of the policy are given their generally prevailing meaning and "interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 516–17 (5th Cir. 2005) (citing La. Civ. Code arts. 2047, 2050). Ambiguities in the policy must be construed against the insurer and in favor of coverage. *Id.* The court resolves an ambiguity by asking "how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." *Id.*

Louisiana Revised Statutes § 22:1892 makes an insurer liable for penalties and attorney fees in certain circumstances based on its bad faith handling of a claim. To prevail under this statute, the insured must show that (1) the insurer received satisfactory proof of loss; (2) the insurer failed to tender payment within 30 days of receiving this proof; and (3)

the insurer's failure to pay is "arbitrary, capricious, or without probable cause." *Guillory v. Lee*, 16 So.3d 1104, 1126 (La. 2009). Similarly, Louisiana Revised Statutes § 22:1973(B)(5) provides for an award of penalties when an insurer fails to pay within 60 days and that failure is "arbitrary, capricious, or without probable cause."

Under the first factor, proof of loss, Louisiana courts set no strict requirement as to form and instead only require that the insurer "obtain[] sufficient information to act on the claim." *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 739 (5th Cir. 2010) (quoting *Sevier v. U.S. Fid. & Guar. Co.*, 497 So.2d 1380, 1384 (La. 1986)). On the third, compliance with the statute means that the insurer "must pay any undisputed amount over which reasonable minds could not differ." *Dupree v. Lafayette Ins. Co.*, 51 So. 3d 673, 698 (La. 2010). The insurer does not act arbitrarily or capriciously, however, if it "has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." *Reed v. State Farm Mut. Auto. Ins., Co.*, 857 So. 2d 1012, 1021 (La. 2003).

Church Mutual maintains that there is no basis for its liability under either bad faith statute, because it was not notified as to a dispute on the damage estimate until July 2021 and did not receive an estimate from plaintiffs until after suit was filed. It also asserts that the inspection provided by plaintiffs' counsel could not provide satisfactory proof of loss, because it lacked an inspection date or photographs and "contained items for alleged damages to the Church that no one else in this matter opined was damage sustained . . . ." Doc. 44, att. 3. In support of the latter contention, Church Mutual points to the adjuster's testimony that she adjusted for all damages at the facility rather than attempting to isolate hurricane-related damages and the insured's testimony that some of the items set forth in

the estimate were not damaged. Plaintiffs show, however, that Church Mutual's adjuster failed to inspect the roof or all buildings on the property after Hurricane Laura, despite being unable to confirm the source of water staining on ceiling tiles. Doc. 43, att. 3, pp. 37–41, 46, 48–49, 54.

An insurer may violate Louisiana's bad faith statutes when it fails to adequately inspect the insured property. *See Jacobs v. GEICO Indem. Co.*, 256 So.3d 449, 457 (La. Ct. App. 2d Cir. 2018) (upholding bad faith verdict against GEICO based on trial evidence that its adjuster failed to thoroughly inspect a vehicle before denying a flood claim). Plaintiffs' evidence creates genuine issues of material fact as to whether Church Mutual's adjuster turned a blind eye to potential evidence of covered losses at the insured property. Church Mutual admits that it paid the ACV after appraisal, but this award is several times greater than the damage estimates it originally approved. To the extent Church Mutual's own inspections were inadequate and were responsible for its initial underpayment of the claim, it may be liable for bad faith.

**B. Assignment of Claims**

Church Mutual next asserts that Kinder Bible has no cause of action because it has assigned all of its claims. The court agrees that the assignment covers all contractual claims. Bad-faith claims, however, "must be expressly provided for in the act of assignment." *Disaster Relief Servs. Of N. Carolina, LLC v. Mut. Cas. Ins. Co.*, 2009 WL 935963, at *6 (W.D. La. Apr. 6, 2009); *accord Pontchartrain Gardens, Inc. v. State Farm Gen. Ins. Co.*, 2009 WL 86671 (E.D. La. Jan. 13, 2009). It is the insured (as property owner) and not the assignee who will have suffered as a result of any delay in payment,

and whose interests the bad faith statutes are designed to protect. While the assignment covers all "rights, benefits, interests, proceeds, and any causes of action" under the policy, it makes no reference to the extra-contractual bad faith claims. Accordingly, summary judgment will be granted as to Kinder Bible's contractual claims but denied as to its bad faith claims.

### C. Appraisal Costs

In the amended complaint plaintiffs seek damages including "appraisal fees and costs, appraiser and engineer fees and costs, litigation fees and costs, prejudgment interest and attorneys' fees, as well as any other damages due on each count set forth herein . . . ." Doc. 26, p. 17. Church Mutual moves for dismissal of any claim of appraisal fees and costs, noting that the policy provides that these are to be shared between the parties:

> APPRAISAL
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that the selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. An award, in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value of the loss. Each party will:
> 1.   Pay its chosen appraiser; and
> 2.   Bear the other expenses of the appraisal and umpire equally.

Doc. 44, att. 24.

Plaintiffs do not contest that appraisal fees are unavailable under the policy. They maintain, however, that they can be recovered by Kinder Bible as an item of special damages under Louisiana Revised Statutes 22:1973. Church Mutual responds that

appraisal is a voluntary procedure that Stalwart elected to pursue, knowing that it would owe the associated costs. It is unclear from the record before the court whether Kinder Bible, the only party with a potential bad faith claim, incurred any appraisal costs. To the extent that it did, however, and that it can show that Church Mutual's bad faith both predated appraisal and that such costs are "damages sustained as a result" of Church Mutual's breach of its duty of good faith, La. R.S. § 22:1973(A), it may recover under this category of damages. Accordingly, summary judgment will be denied.

### D. Replacement Cost Value

In the amended complaint, plaintiffs also contend that Church Mutual breached the contract by tendering only the Actual Cash Value ("ACV") and not the Replacement Cost Value ("RCV") of the appraisal award. Doc. 26, pp. 12–14. Church Mutual maintains that it was only required to pay ACV at the time, because no repairs had been completed. The policy provides:

> C. Loss Conditions
> . . . .
> 7. Valuation
> a. Replacement Cost. If Replacement Cost is shown in the Declarations Page as applicable to the Covered Property, we will determine the value of Covered Property in the event of loss or damage as follows:
> . . . .
> (3) We will not pay on a Replacement Cost basis for any loss or damage:
> (a) Until the lost or damaged property is actually repaired or replaced; and
> (b) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

Doc. 44, att. 24, pp. 54–55. As the court has emphasized several times, this provision cannot be used by an insurer to claim at trial that RCV is unrecoverable because the insurer's own delay in payment has made completion of repairs impossible. Plaintiffs may rely on this principle, to the extent that they can show they are still unable to complete repairs despite receiving the appraisal award. At the same time, the court finds no contractual basis under which Church Mutual would have owed RCV at the time appraisal was completed. Accordingly, its failure to tender the amount cannot support a claim for breach of contract. Summary judgment will be granted on this issue.

Similar to the replacement cost value issue, plaintiffs seek payment of ordinance and law/increased cost of construction coverage. Such coverage is only due under the policy upon completion of repairs. Doc. 44, att. 24. Plaintiffs may be able to recover this amount, however, if they show that Church Mutual's underpayment of the claim prevented them from completing repairs. Accordingly, the issue is premature. The court agrees, however, that Church Mutual is not liable for any bad faith damages flowing from its failure to pay this amount because there has been no determination that it is due.

### E. Structures on Premises

Finally, Church Mutual contends that it has fully indemnified plaintiffs for the $5,000.00 sub-limit for structures on premises coverage. According to the appraisal award estimate, the cost to replace fencing is $21,990.80. Doc. 43, att. 5. The policy provides that "[o]utdoor fences and retaining walls" are not covered except as provided in the coverage extensions, and the applicable extension (Structures on Premises) states that these are only covered up to a $5,000.00 sub-limit. Doc. 44, att. 24, pp. 68, 71.

Plaintiffs rely on a November 2020 email from a Church Mutual claims representative, stating:

> In addition, please find a copy of the policy and endorsements if needed. I know Mark had a question about fencing.
> If attached to the building, fencing would fall under the building limit. If not, it is handled under Structures on Premises under the Coverage Extensions. Sublimit of $5,000. Applicable deductible is the deductible that applies to the building where the fence is located.

Doc. 43, p. 18. Plaintiffs further note that the policy defines a "building" as "the building or structure described in the Declarations Page, including . . . [f]ixtures, including outdoor fixtures." Doc. 44, att. 24, p. 67. To the degree any fences were attached to the covered buildings there is an ambiguity as to whether they were part of those buildings and thus covered under the policy's building limit. *Cf. Ormond Country Club v. James River Ins. Co.*, 2008 WL 859482, at *4 (E.D. La. Mar. 27, 2008) (no ambiguity as to coverage under similar policy terms because fence was not attached to building). Accordingly, the ambiguity must be resolved in favor of coverage.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [docs. 38, 44] will be **GRANTED IN PART** and **DENIED IN PART**. Accordingly, all claims brought by Kinder Bible except those for bad faith as well as Stalwart's claim for breach of contract based on failure to tender the RCV amount of the appraisal award will be **DISMISSED WITH PREJUDICE**. Likewise, any bad faith claim based on Church Mutual's failure to tender the RCV amount of the appraisal award or coverage under ordinance and law will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on the 20th day of December, 2023.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**